UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WINCO HOLDINGS, INC., an Idaho corporation; WINCO FOODS, LLC, a Delaware limited liability company; and DOES 1 through 20, inclusive,<br><br>　　　　　Defendants. | No. 1:16-cv-00508-DAD-SAB<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND REMANDING MATTER TO THE STANISLAUS COUNTY SUPERIOR COURT FOR LACK OF SUBJECT MATTER JURISDICTION<br><br>(Doc. Nos. 8 and 13) |

　　　　On January 15, 2016, plaintiff Keith Williams filed the instant action in the Stanislaus County Superior Court, alleging a single cause of action for wrongful termination in violation of public policy. (Doc. No. 3-1, at 4–8.) Plaintiff alleges that his right to privacy under Article 1, Section 1 of the California Constitution was violated when defendants terminated his employment on their night stocking crew after he failed a random drug test. (*Id*. at 6–7.) On April 11, 2016, defendants removed the action to federal court on the basis of federal question jurisdiction pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Doc. Nos. 1 and 2.) On April 18, 2016, defendants moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the grounds that plaintiff's claim is completely preempted by § 301 of the LMRA, and that he failed to exhaust his claim pursuant to the

procedures of the LMRA.  (Doc. No. 8-1, at 2.)  Plaintiff argues that his claim is not preempted because a state law claim is only preempted by § 301 when its resolution requires the interpretation of, as opposed to merely a reference to, a collective bargaining agreement.  (Doc. No. 11, at 6–7) (citing *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 690 (9th Cir. 2001) and *Lingle v. Norge*, 486 U.S. 399 (1988)).

On May 17, 2016, defendant's motion to dismiss came on for hearing before the court.[1]  Attorney Kristina Launey appeared telephonically on behalf of defendants and attorney Jeremy Pasternak appeared telephonically on behalf of plaintiff.  Having considered the arguments of the parties and for the reasons set forth below, defendants' motion to dismiss will be denied and the action remanded back to Stanislaus County Superior Court due to lack of subject matter jurisdiction.

I.  **Judicial Notice of Collective Bargaining Agreements**

Defendants request that the court take judicial notice of two collective bargaining agreements ("CBA") — WinCo Foods #21 Hourly Employee Working Conditions and Wages Agreements — which were in effect during plaintiff's employment with WinCo.  (Doc. No. 9.)  The court "may take judicial notice of a CBA in evaluating a motion to dismiss . . . [as] such documents properly are considered . . . materials 'not subject to reasonable dispute' because they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  *Jones v. AT & T*, No. C 07-3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008).  *See also Densmore v. Mission Linen Supply*, 2016 WL 696503, at *4 (E.D. Cal. Feb. 22, 2016) (taking judicial notice of CBAs where necessary to resolve issues of preemption).  Therefore, the court will take judicial notice of the two CBAs.

/////

/////

/////

---

[1] On May 11, 2016, plaintiff moved to remand the action to state court.  (Doc. No. 13.)  The hearing on that motion was continued to July 19, 2016 and again to September 6, 2016, by order of the court pending disposition of defendant's motion to dismiss.  (Doc. Nos. 17 and 18.)

## II. Legal Standards

*A. Preemption under Section 301 of the LMRA*

Section 301 of the LMRA, codified at 29 U.S.C. § 185(a), states in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . .

The Supreme Court has recognized that the LMRA "does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–57 (1957). *See also Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute."). As a result, because "[a]n action arising under § 301 is controlled by federal substantive law even though it is brought in state court," the Supreme Court has deemed it proper for such cases to be removed to federal court under federal question jurisdiction. *Avco Corp. v. Aero Lodge No. 375, Int'l. Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968).

Section 301 preemption subsequently expanded "beyond cases specifically alleging contract violation to those whose resolution is 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Cramer*, 255 F.3d at 689 (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)). "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id.*

Nevertheless, "not every dispute concerning employment, or tangentially involving a provision of a [CBA], is preempted by § 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211. In *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987), the

Supreme Court clarified that § 301 preemption applies only to "claims founded directly on rights created by collective-bargaining agreements, and claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* at 394 (quoting *Franchise Tax Bd.*, 463 U.S. at 23). In that case the Supreme Court also explicitly rejected the argument that "all employment-related matters involving unionized employees be resolved through collective bargaining and thus be governed by a federal common law created by § 301." *Id.* at 396, n.10 (internal citations omitted).

In *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007), the Ninth Circuit set forth a two-part analysis for determining whether a plaintiff's claim is preempted by § 301. First, a court must "determine whether a particular right inheres in state law or, is instead grounded in a CBA." *Id.* "If the right exists solely as a result of the CBA, then the claim is preempted, and [ ] analysis ends there." *Burnside*, 491 F.3d at 1059. However, if the claim exists independently from the CBA, the court must still decide whether it is "'substantially dependent' on the terms of a CBA" by determining "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *Id.* at 1060 (citing *Caterpillar*, 482 U.S. at 394 and *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)). If the claim requires interpretation of the CBA, the claim is preempted; if the claim merely requires "looking to" the CBA, it is not preempted. *Id.*

The first step of the *Burnside* analysis described above requires the court to "consider the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* at 1059-60 (quoting *Livadas*, 512 U.S. at 123). The second step of the analysis requires the court to determine whether the claimed rights are "substantially dependent" on the analysis of the CBA. The court in *Burnside* clarified that a defense relying on the terms in a CBA is "not enough to 'inject[ ] a federal question into an action that asserts what is plainly a state-law claim.'" *Id.* at 1053 (quoting *Caterpillar*, 482 U.S. at 398–99).[2] *See also Humble v. Boeing Co.*, 305 F.3d 1004,

---

[2] As the Supreme Court explained "the plaintiff is the master of the complaint," and that if the defendant could engineer "the forum in which the claim shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing." *Caterpillar*, 482 U.S. at 398–99.

1011 (9th Cir. 2002) ("reliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption."). The "'look to'/'interpret' distinction" in the second step of the analysis has been recognized as "not a task that always lends itself to analytical precision." *Id.* at 1060. *See also Cramer*, 255 F.3d at 691. Of course, "when the meaning of the contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require that" the state law claim is preempted. *Livadas*, 512 U.S. at 124. *See also Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005); *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1014 (9th Cir. 2000). Moreover, "'[§] 301 does not permit parties to waive, in a collective-bargaining agreement, nonnegotiable state rights' conferred on individual employees." *Valles*, 410 F.3d at 1076 (quoting *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1111 (9th Cir. 2000)). "Thus, in order for complete preemption to apply, 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.'" *Id.* (quoting *Cramer*, 255 F.3d at 691). *See also Ward*, 473 F.3d at 998 (the "determinative question is whether the state law factual inquiry . . . turn[s] on the meaning of any provision of the collective-bargaining agreement.").

The Ninth Circuit's decision in *Cramer* is instructive. There, the court addressed the appropriate considerations in determining if a state law claim required the court to "interprets" or merely "refer to" a CBA in a case presenting the issue of whether a plaintiff's state law claims for invasion of privacy and intentional infliction of emotional distress were preempted under § 301. 255 F.3d at 688. The court held that the CBA at issue in that case could not have "contemplate[d] the surreptitious videotaping plaintiffs challenge[d] in their state law claims . . . [because] § 301 does not grant the parties . . . the ability to contract for what is illegal under state law." *Id.* at 694–95. In reviewing the Supreme Court's decisions in *Allis-Chalmers*, *Lingle*, and *Livada*, the court found that preemption under § 301 was not appropriate where "the legal character of a claim [is] 'independent' of rights under the collective bargaining agreement . . . [and] the bare

fact that a collective bargaining agreement will be consulted" does not extinguish the claim. *Id.* at 690–91. Thus, the court concluded where a claim involves the "employer's alleged failure to comport with its contractually established duties," it is preempted. *Id*. However, "if the claim may be litigated without reference to rights and duties established" in a collective bargaining agreement, it is not preempted. *Id*. The court noted that "the plaintiff's claim is the touchstone for this analysis . . . [and] the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id*. Moreover, the court in *Cramer* was careful to distinguish a bona fide connection between the claim and the CBA and one where the link between the two was "creative" at best, noting that the connection "must reach a reasonable level of credibility." *Id*. at 692.

   B. *Random Drug Testing of Employees in California*

The California Constitution specifically guarantees the right of privacy. Cal. Const., art. I, § 1; *American Academy of Pediatrics v. Lungren*, 16 Cal. 4th 307, 326 (1997). Article I, section 1 of the California Constitution provides:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

"[I]n many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts." *Lungren*, 16 Cal. 4th at 326–27. This state constitutional provision "creates a legal and enforceable right of privacy for every Californian." *White v. Davis*, 13 Cal. 3d 757, 775 (1975). "The party claiming a violation of the constitutional right of privacy established in article I, section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." *Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 21, AFL–CIO v. Superior Court*, 42 Cal. 4th 319, 338 (2007) (citing *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 39–40 (1994)).

The California Supreme Court has adopted a balancing test in considering claims of invasion of privacy except those which involve "an obvious invasion of an interest fundamental

to personal autonomy," such as freedom from involuntary sterilization or the freedom to pursue consensual family relationships. *Hill*, 7 Cal. 4th at 34–35, 56. Therefore, under California law, the constitutionality of drug testing in any context is evaluated by weighing and balancing the legitimacy or strength of the justification for the conduct against the intrusion on a protected privacy interest. *Loder v. City of Glendale*, 14 Cal. 4th 846, 893–94 (1997). In *Loder* the California Supreme Court found a policy of drug testing all current employees seeking promotion to be constitutionally overbroad under the California Constitution. *Id*. In so holding, the court recognized that requiring employees to submit to drug testing in order to secure a promotion into safety-sensitive positions had been found to be constitutional by federal courts. *Id*. at 881, n.12. Nonetheless, California "[c]ases generally hold that a drug test of an existing employee without any individualized suspicion is unreasonable unless the employee is in a safety- or security-sensitive position." *Smith v. Fresno Irrigation Dist.*, 72 Cal. App. 4th 147, 160 (1999) (citing *Kraslawsky v. Upper Deck Co.*, 56 Cal. App. 4th 179, 187, n.8 (1997)). *See also Kemp v. Claiborne County Hosp.*, 763 F. Supp. 1362, 1367 (S.D. Miss. 1991) ("[T]he safety sensitivity of an employee's job is a highly important factor in the balancing test to determine the reasonableness of a drug testing procedure.")

In the only published California Court of Appeal decision addressing this issue after *Loder*, the court held that legitimate safety concerns, including regularly working next to ten-foot deep dirt trenches, crawling through pipe that could accidently be flooded, and operating power tools and heavy equipment in close proximity to other employees, justified plaintiff's construction and maintenance position being classified as a safety-sensitive position for purposes of his employer's drug testing policy. *Smith*, 72 Cal. App. 4th at 153–66. The court reasoned

> [T]he cases focus on the degree, severity and immediacy of the harm posed. The "'immediacy'" of the threat of injury and the fact that a single misperformed duty could have irremediable consequences have been determined to be important factors in determining the safety sensitivity of a job. Irremediable consequences result when an employee is not able to rectify his or her mistake and the coworkers of the employee have no opportunity to intervene before harm occurs.

*Id*. at 163–64 (citations omitted). Furthermore, the employer in *Smith* had informed its employees

in advance of its substance abuse policy and provided a six-month grace period during which employees could seek substance abuse treatment and counseling without being terminated. *Id*. at 152. The court noted that plaintiff's expectation of privacy was diminished by this advance notice, stating:

> Although advance notice of drug testing does not automatically defeat an employee's argument that the testing is unconstitutional, it does decrease his expectation of privacy. Advance notice of drug testing minimizes the program's intrusion on privacy interests. The element of surprise inherent in a random testing program has been found minimized when advance notice of the implementation of the policy was given to the affected employee.

*Id*. at 161 (citations omitted). Consequently, because of the safety-sensitive nature of the work at issue in *Smith* and the notice to employees provided, the court upheld the employer's random drug-testing of the plaintiff against his challenge based upon his right to privacy under the California Constitution. *Id*. at 167.

### III.   Analysis

In the present case, plaintiff asserts a claim under state law for wrongful termination in violation of public policy based upon his right to privacy under California law. Defendants move to dismiss the claim as preempted under § 301 of the LMRA because allegedly it "is inextricably intertwined with and substantially dependent upon the Court's interpretation of various provisions of the collective bargaining agreement." (Doc. No. 8-1, at 2.) Applying the first step of the analysis set out by the court in *Burnside*, it appears clear that the basis of plaintiff's claim is not the CBA, but rather is grounded in the California Constitution's guarantee of the right to privacy. Consequently, it is necessary, under the second step of the *Burnside* analysis, to determine whether plaintiff's claim is "'substantially dependent' on the terms of a CBA" by examining "whether the claim can be resolved by 'looking to' versus interpreting the CBA." 491 F.3d at 1060.[3]

---

[3] As stated above, if the appropriateness of the employer's conduct towards its employee is defined by the CBA, then plaintiff's state law claim is preempted by the LMRA. If on the other hand, plaintiff's claim is based upon an independent right upon which the collective bargaining agreement cannot intrude or that the CBA does not contain "clear and unmistakable" language waiving, then there is no preemption. *See Cramer*, 255 F.3d at 691–95.

There is no "clear and unmistakable" language in the CBA waiving the right to privacy which plaintiff asserts in this action under the state constitution. While plaintiff's privacy interests can be waived for random drug testing when there is notice and the position is safety sensitive, *see Smith*, 72 Cal. App. 4th at 167, the CBA in this case does not contain "clear and unmistakable" language waiving plaintiff's privacy rights. Rather, plaintiff alleges in his complaint that he was employed in the night stocking crew when he failed a random drug test administered by the defendant. (Doc. No. 3-1, at 6–7.) In relevant part, an addendum to the relevant CBA states:[4]

> WinCo and the Employee Association agree to implement an alcohol and drug policy which includes random drug and alcohol screening (see attached).
>
> WinCo Foods will implement a random drug and alcohol screening policy and procedure specifically for positions that have been classified as food handling, hazardous and/or safety-sensitive including:
>
> POSITION*
>
> ---
>
> All Forklift Certified Employees,
> Meat Department Manager and Employees
> Deli Department Manager and Employees
> Pizza Department Manager and Employees
> Bakery Department Manager and Employees
> Security Loss Prevention
>
> ---
>
> *The testing of these positions has been determined in consultation with legal counsel after review of legal case law, discussions, observations and careful review of each job description.

(Doc. No. 9-1, at 20.) Thus, the CBA specifically lists six specific categories of employees subject to random drug testing. The night stocking crew position held by plaintiff is not amongst them. At oral argument on the pending motion, defendants' counsel argued that the addendum's list is non-exhaustive and that the CBA generally provides for random drug testing for "food handling, hazardous and/or safety-sensitive" positions. Defendants' counsel also argued plaintiff's night stocking crew position is safety sensitive because it involves loading and

---

[4] Courts may look to a CBA to determine whether a plaintiff's claim necessarily implicates its terms without "interpreting" the agreement, as that word is used in the context of § 301 preemption. *See Cramer*, 255 F.3d at 693.

1  unloading pallets of merchandise and because forklifts, although not operated by plaintiff, are
2  being operated in the area.  These arguments, however, are unpersuasive because "[w]here a party
3  defends a state cause of action on the ground that the plaintiff's union has bargained away the
4  state law right at issue, the CBA must include 'clear and unmistakable' language waiving the
5  covered employees' state right 'for a court to even consider whether it could be given effect.'"
6  *Cramer*, 255 F.3d at 692 (*quoting Livadas*, 512 U.S. at 125).  *See also Valles*, 410 F.3d at 1076.
7  Notice of drug testing for "food handling, hazardous and/or safety-sensitive" positions followed
8  by a specific list that does not include the night stocking crew is not a "clear and unmistakable"
9  waiver of the plaintiff's privacy interests under California law.  Moreover, nothing in the
10 applicable CBA suggests that the night stocking crew positions are designated as "food handling,
11 hazardous and/or safety-sensitive" positions.  Indeed, the omission of the night stocking crew
12 from the specified listing is a compelling indication that it is not a safety-sensitive position.
13 Because there is no "clear and unmistakable" waiver here, plaintiff's claim is not "'substantially
14 dependent' on the terms of a CBA" and it can be resolved by merely "looking to," and not
15 "interpreting" the CBA.  *Burnside*, 491 F.3d at 1060; *Cramer*, 255 F.3d at 692.

16      Because plaintiff's claim rests entirely on a claimed right created by state law and is not
17 substantially dependent on the terms of the CBA, his claim is not preempted by § 301 of the
18 LMRA.  The complaint's sole cause of action is a state law claim based upon the California
19 Constitution and there are no allegations which would give rise to diversity jurisdiction.  Because
20 defendants' only basis for removal of the action to federal court was federal question jurisdiction
21 pursuant to § 301 of the LMRA, no federal question is presented on the face of the complaint.
22 The court therefore remands the matter to Stanislaus County Superior Court for lack of subject
23 matter jurisdiction.  *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 967
24 (9th Cir. 2004) (a district court has "a duty to establish subject matter jurisdiction over the
25 removed action *sua sponte*, whether the parties raised the issue or not.").
26 /////
27 /////
28 /////

**CONCLUSION**

For the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 8) is denied;

2. The court remands this action to the Stanislaus County Superior Court due to lack of subject matter jurisdiction;

3. Plaintiff's motion to remand (Doc. No. 13) is rendered moot by this order; and

4. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated:  **July 6, 2016**                              /s/ Dale A. Drozd
                                                    UNITED STATES DISTRICT JUDGE